Alvin SCHIRO, Plaintiff–Appellee,

v.

OFFICE DEPOT, INCORPORATED; Sedgwick Claims Management Services, Incorporated, Defendants–Appellants.

No. 15–30066.

United States Court of Appeals, Fifth Circuit.

Dec. 16, 2015.

Thomas Jeffrey Barbera, Esq., Fred L. Herman, Esq., Law Offices of Fred L. Herman, New Orleans, LA, Michael Charles Ginart, Jr., Tonry & Ginart, Chalmette, LA, for Plaintiff–Appellee.

Richard Guy Duplantier, Jr., Esq., Director, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, for Defendant–Appellant.

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge: *

Office Depot, Incorporated ("Office Depot"), and its plan administrator, Sedgwick

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

Claims Management Services, Incorporated ("Sedgwick"), appeal a judgment that Sedgwick abused its discretion in denying Alvin Schiro's short-term disability benefits claim. Because the denial was supported by substantial evidence, and the district court imposed a "treating physician" rule that is inappropriate in the context of plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), we reverse and render judgment in favor of Office Depot and Sedgwick.

## I.

Office Depot employed Schiro as a store manager, providing him with coverage through its ERISA-governed Short Term Disability Benefits Program (the "Plan"), which replaces an employee's wages while he is "totally disabled," meaning he cannot perform all of his material and essential duties—the duties normally required that cannot be reasonably omitted, changed, or accommodated. Schiro's material and essential duties as manager included being able to complete documentation accurately, operate equipment necessary to run the store, freely access all areas of the store, climb a ladder, and move up to fifty pounds. Sedgwick administered the Plan for Office Depot, which delegated to Sedgwick sole discretion to interpret the Plan and decide claims.[1]

On April 18, 2012, Dr. Charles Thomas surgically removed a blockage in Schiro's colon. On April 27, Sedgwick notified Schiro that he was required to support his benefits claim with medical evidence by May 10. Schiro missed the deadline—causing Sedgwick tentatively to deny benefits—but submitted office-visit notes from Thomas on May 15 stating that Schiro would be disabled until June 12. After Sedgwick's internal medical personnel reviewed Thomas's notes, Sedgwick approved Schiro's claims through May 31 under the Plan's guidelines. Sedgwick's medical personnel concluded that, because Schiro was healing normally, Thomas's notes did not support a determination that Schiro could not perform all the material and essential duties of his job after May 31. Sedgwick did, however, request Schiro to submit Thomas's notes, from appointments on May 22 and May 31, for another review and possible extension of benefits.

Sedgwick's personnel reviewed the May 22 and May 31 notes, which revealed that Schiro was recovering from surgery normally. Schiro began to experience numbness in his thigh and some diminished forward flexion, but his reflexes and strength remained normal. Sedgwick denied an extension of benefits because numbness in the thigh and diminished flexibility did not bear on Schiro's ability to perform his material and essential duties without assistance.

Sedgwick also analyzed office visit notes from Schiro's June 11 appointment with a neurologist, Dr. Walter Truax. Truax reiterated that Schiro complained of numbness in his thigh caused by meralgia paresthetica[2] and some limited flexion, so Truax ordered Magnetic Resonance Imag-

---

published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. In deciding claims, Sedgwick was limited to considering objective medical evidence. The Plan states that "objective medical evidence shall mean evidence that establishes facts and conditions, as perceived without distortion by personal feelings, prejudices or interpretations, and shall include x-rays, quantitative tests, laboratory findings, data, records, reports from the attending Physician and reports from a consulting Physician."

2. A condition characterized by tingling or numbness in the outer thigh.

ing ("MRI")[3] and Electromyography ("EMG")[4] tests for Schiro. Truax concluded Schiro's reflexes, cranial nerves, optic discs, visual fields, and strength were normal.

After the MRI and EMG, Schiro inquired about going back to work; Truax replied that it was entirely up to him. Schiro said he could not work, and Truax told him that was fine; he could stay off work for the time being. Truax did not examine the material and essential duties of Schiro's jobs and did not conclude that Schiro could not perform these duties without assistance. Sedgwick again denied an extension of benefits because it concluded that Thomas's and Truax's notes up to June 11 did not support a determination that Schiro was unable to perform the material and essential duties of his job without assistance.

On July 19, 2012, Sedgwick's medical personnel evaluated Schiro's MRI and EMG. The MRI indicated that Schiro had degenerative disc disease but did not indicate any limit on Schiro's ability to walk or perform the material and essential duties of his job without assistance. The EMG was normal. Sedgwick acknowledged that the objective medical evidence indicated that Schiro had degenerative disc disease and meralgia paresthetica, but those conditions did not prevent him from performing the material and essential duties of his job without assistance.

Sedgwick again reviewed Schiro's entire file on July 23 and concluded that he was not totally disabled under the Plan. Sedgwick finally denied the claim on July 24. In September 2012, Schiro appealed the denial, and Sedgwick initiated a review by Dr. Charles Brock, a board-certified neurologist. Although he did not personally examine Schiro, Brock examined Schiro's entire file, concluding that the objective medical evidence did not support the conclusion that Schiro faced any restrictions or limitations regarding the demands of his job. Thus, Brock concluded Schiro was not totally disabled under the Plan.

## II.

Schiro sued Sedgwick and Office Depot for wrongful denial of his claims. Although Sedgwick reviewed all of Schiro's objective medical evidence on at least five occasions, the district court granted Schiro summary judgment and remanded for Sedgwick to consider additional evidence.[5] Sedgwick again reviewed the entire file and denied the claims.

 The district court granted Schiro's additional motion for summary judgment, concluding that Sedgwick had abused its discretion by relying on its internal medical staff's opinions rather than Schiro's treating physicians. Sedgwick and Office Depot appeal.[6]

3. An imaging technique that uses magnetic fields and radio waves to form images of the body.

4. An EMG records electrical activity produced by the skeletal muscles.

5. First, Schiro submitted another set of office-visit notes from Truax based on Schiro's prior MRI and EMG, which Sedgwick had already viewed. Though Schiro's condition and medical evidence had not changed, Truax suggested Schiro would be disabled for up to six more weeks. Second, Schiro submitted office

visit notes from Dr. Gregory Fautheree, who reviewed Schiro's files and concluded Schiro had degenerative disc disease. Neither of these was before Sedgwick when it made its final denial, and neither doctor indicated that Schiro could not perform the material and essential duties of his job without assistance.

6. Schiro contends the appeal was not timely because Sedgwick and Office Depot filed a notice of appeal on January 26, 2015—more than 30 days after the district court had entered its summary judgment order on November 18, 2014. Schiro's contention fails.

### III.

We review a summary judgment in the ERISA context *de novo* and apply the same standards as did the district court. *Killen v. Reliance Stand. Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir.2015). Because Sedgwick exercised sole discretion to interpret the Plan and decide claims, we review the decision to deny Schiro's claims only for an abuse of discretion. *Id.*

### IV.

Office Depot and Sedgwick advance two issues on appeal. First, they posit that substantial evidence supported the denial of Schiro's claims. Second, they maintain that the district court did not review their decision for abuse of discretion but rather independently reweighed evidence. We agree with Office Depot and Sedgwick on both accounts.

### A.

■ As administrator, Sedgwick would "abuse[ ] its discretion where [its] decision is not based on evidence, even if disputable, that clearly supports the basis for [the] denial." [7] Sedgwick's decision prevails if it "is supported by substantial evidence and is not arbitrary and capricious." [8] Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [9]

A claim administrator need not conduct an independent medical examination of the claimant before denying a claim. *Id.* at 308 n. 3. Instead, a decision may be supported by substantial evidence where it is based on medical opinions formed after reviewing all the medical evidence offered by a claimant. In *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505 (5th Cir.2010), Anderson applied for short-term disability benefits with his employer, Cytec, based on post-traumatic stress disorder ("PTSD"). He supported his claim with notes from his treating psychiatrist and nurses, which stated that he was "incapable of performing job duties." The claim administrator granted the claim but requested more documentation and submitted the claim for peer review by an-

---

To appeal the summary judgment order, Sedgwick and Office Depot had to wait either for the district court to enter final judgment by issuing a separate document containing the order, or for 150 days to elapse. Fᴇᴅ. R.Cɪᴠ.P. 58(c)(2). The time to file a notice of appeal does not begin to run until final judgment is entered. Fᴇᴅ. R.Aᴘᴘ. P. 4(a)(1). Sedgwick and Office Depot filed their notice of appeal before the district court had issued a separate document reflecting the order, and before 150 days had elapsed. Where, as here, a party files a notice of appeal before entry of final judgment, we treat the notice of appeal as being filed on the date of entry of the final judgment. *See* Fᴇᴅ. R.Aᴘᴘ. P. 4(a)(2). After the filing of the notice of appeal, the district court issued a separate document reflecting the final judgment. As a result, the notice of appeal became effective on the same day of entry of final judgment under Rule 4(a)(2), and the appeal was timely. *See FirsTier Mort-*

*gage Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 273, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (noting that some premature notices do not prejudice the appellee and therefore should not invalidate otherwise proper appeals).

**7.** *Killen*, 776 F.3d at 307 (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir.2009)). Importantly, our review of Sedgwick's decision may be based only on the evidence before Sedgwick when it made its final decision. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir.1999).

**8.** *Id.* (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).

**9.** *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir.2012).

other psychiatrist, Dr. Mendelssohn, who reviewed the entire file but did not personally examine the claimant. Mendelssohn acknowledged the treating physician's conclusion but noted that nothing in the file showed "the functional effect of his PTSD" on Anderson's job. Mendelssohn concluded that nothing in the file "preclude[d the claimant] from performing his own occupation." *Id.* at 510. Cytec then had another psychiatrist, Dr. Burstein, review Mendelssohn's evaluation. Burstein did not personally examine Anderson either but concluded that he was not disabled from performing his job. Finally, non-medical personnel at Cytec conducted a final review of Anderson's entire file and denied it. Although no Cytec personnel personally examined Anderson, and Cytec's conclusions conflicted with the opinions of the treating physicians, we upheld the denial of benefits. *Id.* at 515.

Schiro's situation is similar to the facts in *Anderson.* Although Schiro offered medical evidence from his treating physician that he was disabled from meralgia parasthetica and degenerative disc disorder, his doctors never explained why or how that prevented him from performing his job functions. *Id.* at 513. As in *Anderson,* Sedgwick's personnel did not personally examine Schiro but did review his entire file at least five times and concluded he was not totally disabled under the Plan. Like the claim administrator in *Anderson,* Sedgwick could acknowledge that Schiro suffered from certain maladies but conclude that they did not amount to total disability.

Sedgwick's denial of Schiro's claim was not arbitrary and capricious and was supported by substantial evidence because it was based on its medical personnel's opinions formed after numerous, thorough reviews of Schiro's claims and objective medical evidence. The district court erred in concluding otherwise, and judgment should have been for Office Depot and Sedgwick.

### B.

■ If Sedgwick's decision was supported by substantial evidence, the district court's analysis should have ended there. The court, however, after discounting Sedgwick's medical personnel's opinions in light of Schiro's treating physicians' opinions, concluded that Sedgwick's decision was not supported by substantial evidence. That was error. When reviewing a claim administrator's determination, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Killen,* 776 F.3d at 308 n. 2 (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). The district court did precisely that when it criticized Sedgwick's decision to rely on its internal medical personnel's opinions "in light of the treating physicians' multiple statements that Schiro was disabled" [10] and criticized Sedgwick for "dismiss[ing] the treating physicians' written statements." [11] Under proper abuse-of-discretion review in the ERISA context, Sedgwick was not required to explain why it credited its internal opinions over those of the treating physicians, nor was Sedgwick's evidence less substantial in light of conflicting opinions offered by the treating physicians.[12] The district court did not

---

10. *Id.*

11. *Schiro v. Office Depot,* 2014 WL 6607080, at *7 (E.D.La. Nov. 19, 2014).

12. *Nord,* 538 U.S. at 834, 123 S.Ct. 1965; *Holland,* 576 F.3d at 250 ("Indeed, the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that

conduct a proper abuse-of-discretion review when it imposed such a burden.

For these reasons, we REVERSE the summary judgment in favor of Schiro and RENDER judgment in favor of Office Depot and Sedgwick.

job has been given to the administrators of

ERISA plans." (internal quotation omitted)).